UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DAVALL GARRISON,                                    :
                        Plaintiff,          :
                                   :
v.                                                                    :          **OPINION AND ORDER**
                                   :
AMERICAN SUGAR REFINING, INC.,                :          21 CV 10917 (VB)
AMERICAN SUGAR HOLDINGS, INC., ASR         :
GROUP INTERNATIONAL, INC., TAPPAN         :
DUTTA, and DENNIS ANGONE,                       :
                         Defendants.       :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Davall Garrison brings this action against defendants American Sugar Refining,

Inc., American Sugar Holdings, Inc., and ASR Group International, Inc. (collectively, "American

Sugar"), and two supervisors, Tappan Dutta and Dennis Angone, alleging defendants (i)

discriminated against him on the basis of his race and national origin, and (ii) retaliated against

him for complaining about such discrimination, in violation of Title VII of the Civil Rights Act

of 1964 ("Title VII"); Section 1981 of the Civil Rights Act of 1866 ("Section 1981"); and the

New York Human Rights Law ("NYSHRL").  Plaintiff also brings a claim for unequal pay in

violation of the New York Equal Pay Act ("NYEPA").

      Now pending is defendants' motion to dismiss the amended complaint pursuant to Rule

12(b)(6).  (Doc. #27).

      For the following reasons, the motion is GRANTED in part and DENIED in part.

      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.   Plaintiff's Employment at American Sugar

Plaintiff, an African American man, has been employed by American Sugar at its factory in Yonkers, New York, since September 4, 2009.  Around March 2011, plaintiff joined American Sugar's Quality Department as a "Lab Tech 3."  (Doc. #26 ("Am. Compl.") ¶¶ 20–21). At that time, there were four other Lab Tech 3s:  Tommy Chadwick (White), Gregory Johnson (Jamaican), Kawsu Jabbi (Black and Gambian), and Deodat Gewan (Guyanese of Indian descent).  Around 2015, Chadwick retired and was replaced by Ezekiel Rosario (Dominican-American).  Defendants Dennis Angone (White) and Tappan Dutta (Indian) were plaintiff's supervisors at American Sugar's factory, although at times he reported to them only indirectly.

Plaintiff is a member of Local 74, United Service Workers Union (the "Union").  Around 2016, he became the Union representative for his lab.  Approximately one year later, Union representatives, including plaintiff, and American Sugar management negotiated a renewed Collective Bargaining Agreement ("2017 CBA").  They renewed the agreement again in January 2020 ("2020 CBA"), after negotiations in which plaintiff again served as a Union representative.[1]

---

[1]   In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," as well as documents which are "integral to the complaint" because the complaint "relies heavily upon [their] terms and effect."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  Because the 2017 CBA and 2020 CBA are integral to the amended complaint and are attached as exhibits to defendants' motion (Docs. ##29-1 and 29-2, respectively), the Court will consider them.

II.     <u>Alleged Discrimination and Retaliation</u>

According to the amended complaint, soon after becoming a Lab Tech 3 in 2011, plaintiff noticed Angone and Dutta treated him with more hostility and suspicion than his non-African American coworkers.  Angone refused to give plaintiff the same assistance he gave to non-African American Lab Tech 3s.  Multiple coworkers told plaintiff to "watch out" for Angone and Dutta, who "had it out" for him because he was African American.  (Am. Compl. ¶ 38).  Angone and Dutta allegedly tape-recorded plaintiff and scrutinized his paperwork, looking for an excuse to fire him.  Angone also repeatedly disparaged plaintiff as "lazy" and criticized him more than non-African American employees, despite plaintiff's excellent and conscientious performance of his duties.  (Id. ¶¶ 41, 71, 123).

Around May 2012, Angone filed a disciplinary ticket against plaintiff for failing to ensure the "YSI Sugar Loss Detecting Machine" was working properly, even though this task was part of Angone's job description, not plaintiff's.  (Am. Compl. ¶ 52).  According to plaintiff, Angone tried to force him to do this task, which is performed in locations smelling strongly of sewage, "simply because he was the only African American employee."  (<u>Id</u>. ¶ 54).  After Angone refused to rescind the disciplinary ticket, plaintiff reached out to his Union representative, Chris Dempsey, and had a grievance meeting with Human Resources ("HR") Representative Debbie Troche.  Troche reviewed the job descriptions, "begrudgingly agreed with Plaintiff," and removed the ticket from his file.  (<u>Id</u>. ¶ 57).  After the meeting, Dempsey warned plaintiff to "watch out" because Angone was a known racist and "always gave problems" to African American employees (<u>id</u>. ¶ 58), and American Sugar's HR representatives, who were white, "brush[ed] aside" minority employees' complaints about white employees.  (<u>Id</u>. ¶ 59).

3

From around 2011 to 2012, Dutta allegedly treated plaintiff poorly because he was not of Indian descent.  According to plaintiff, Dutta gave his colleague Gewan better shifts and permitted him to take long lunch breaks, arrive late, and take last-minute paid-time off.  Dutta threatened to discipline plaintiff if he did not work in Gewan's place when he was out.

According to the amended complaint, throughout plaintiff's employment, Angone made racist remarks about African Americans.  From around 2015 to 2016, Angone "gleefully quoted" Donald Trump's racist comments and said President Obama caused the country to "go[] down the drain."  (Am. Compl. ¶¶ 60–61, 66).  On another occasion, Angone ordered African American employees to lift heavy items, saying "your people are strong."  (Id. ¶ 125).  He also referred to Black Lives Matter protestors as "low-lifes."  (Id.).

Around 2017, at the lab manager's recommendation, American Sugar created three "Senior Lab Tech" positions.  A key responsibility of this position was to monitor machines that prevent water pollution ("Sugar Loss Monitoring"), for which American Sugar had previously been subjected to substantial fines.  Each Senior Lab Tech was assigned an eight-hour shift, to ensure no lapse in monitoring.  Senior Lab Techs had a higher salary and overtime rate than Lab Tech 3s.  The three Senior Lab Tech positions went to the lab employees with the most seniority under the CBA:  Gewan, Jabbi, and Johnson.  At that time, plaintiff was fourth in line.

In May 2019, Gewan accepted a different position at American Sugar and subsequently retired.  Angone decided not to fill the vacant Senior Lab Tech position, which allegedly would otherwise have gone to plaintiff due to his seniority.  However, around July 2019, Angone tasked plaintiff with Sugar Loss Monitoring, a Senior Lab Tech duty.  According to plaintiff, Angone again refused to give him the Senior Lab Tech position and said he would only pay plaintiff the Senior Lab Tech rate for around two hours, the amount of time plaintiff would spend doing

Sugar Loss Monitoring tasks.  And because twenty-four-hour monitoring was critical, Angone required Gewan to work two additional weeks as a Senior Lab Tech after he announced his retirement.

On August 26, 2019, plaintiff filed a grievance with HR, saying he was denied a promotion to Senior Lab Tech "because of race discrimination, favoritism, as well as retaliation for being a lab union steward."  (Am. Compl. ¶ 95).  He then met with HR Manager Camille Valentin, who told him the company had decided not to fill the position and was entitled "to allocate its resources as its business needs dictated."  (Id. ¶ 97).  Plaintiff insisted that the 2017 CBA required the company to have three Senior Lab Techs and "that this decision was simply the latest action" in a long string of discriminatory conduct by Angone, but Valentin denied his grievance.  (Id. ¶ 100).

Because there were only two Senior Lab Techs and Sugar Loss Monitoring needed to be done around the clock, American Sugar assigned other employees to perform those tasks. Plaintiff refused to perform Senior Lab Tech tasks without "commensurate pay" or a promotion. (Am. Compl. ¶ 104).  At some point, plaintiff began performing Sugar Loss Monitoring for two hours before his regular shift, for which he received overtime pay.  From August 2019 until at least May 2020, Angone repeatedly assigned non-African American junior Lab Techs to perform the tasks for overtime pay, allegedly in violation of the 2017 and 2020 CBAs' requirement that overtime be offered according to seniority.  Plaintiff alleges Angone "conveniently forgot" to tell him about overtime opportunities until after plaintiff had already made other plans, or falsely claimed he notified plaintiff of opportunities via calls or texts.  (Id. ¶ 124).  In addition, in February 2020, Angone asked Johnson and Jabbi to arrive two hours early to perform only Sugar Loss Monitoring, which deprived plaintiff of those overtime hours.

According to the amended complaint, around March 2020, plaintiff met with lab manager Wayne Forrester regarding his request for a promotion to Senior Lab Tech.  Forrester, who "knew that [the company] needed someone in this position" and agreed that Angone's refusal to promote plaintiff violated the 2020 CBA, told plaintiff he would submit the promotion paperwork.  (Am. Compl. ¶ 116–17, 120).  In April 2020, because the COVID-19 pandemic left American Sugar short-staffed, plaintiff worked twelve-hours shifts, during which he performed Senior Lab Tech duties.  However, he received the Senior Lab Tech rate for only two hours per shift.  In May 2020, Valentin told Forrester American Sugar "would not under any circumstances" promote plaintiff.  Forrester was allegedly "shocked" that they refused to fill a necessary position and that Angone was instead giving overtime to employees junior to plaintiff.  (Am. Compl. ¶ 120).

On May 28, 2020, plaintiff filed a second grievance with HR, claiming that Angone continued to discriminate against him by denying him a promotion to Senior Lab Tech and training junior employees to do Sugar Loss Monitoring during overtime hours.  Plaintiff then met with Valentin, Angone, and Union representative Dempsey.  Angone allegedly said plaintiff "refused" the position, which plaintiff and Dempsey immediately disputed.  (Am. Compl. ¶¶ 128-30).  In June 2020, American Sugar officially dismissed plaintiff's second grievance, deeming it duplicative of his 2019 grievance and stating there was no open Senior Lab Tech position.

Plaintiff continues to work at American Sugar.  He allegedly continues to do Sugar Loss Monitoring when asked to do so, without the title of Senior Lab Tech and commensurate pay.  According to plaintiff, "[h]e continues to suffer discrimination and retaliation at the hands of

Defendant Manager Angone and the other Defendants and is regularly humiliated and tried to make feel less than because of the color of his skin."  (Am. Compl. ¶ 134).

III.    Procedural Background

On August 25, 2020, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  He received a Notice of Right to Sue from the EEOC on February 22, 2021.  On May 19, 2021, plaintiff commenced this action in New York Supreme Court, Westchester County.  American Sugar removed the case to this Court on December 20, 2021.

**DISCUSSION**

I.    Rule 12(b)(6) Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

---

[2]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.     Preemption

Defendants argue plaintiff's NYSHRL and NYEPA claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301") and must be dismissed.

The Court disagrees.

A.     Legal Standard

Section 301 provides federal jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185. "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987). "Thus, when resolution of a state law claim is substantially dependent upon or inextricably intertwined with analysis of the terms of a CBA, the state law claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." Whitehurst v. 1199SEIU United Healthcare Workers E., 928 F.3d 201, 206 (2d Cir. 2019).

However, when "a plaintiff covered by a CBA asserts legal rights independent of that agreement, preemption does not occur." Whitehurst v. 1199SEIU United Healthcare Workers E., 928 F.3d at 207. "A state-law claim is 'independent' when resolving it 'does not require construing the collective-bargaining agreement.'" Id. (quoting Lingle v. Norge Div. of Magic

Chef, Inc., 486 U.S. 399, 407 (1988)).  "This rule ensures that § 301 is not read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Id.

Importantly, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985).  "That a court may need to consult the CBA in resolving the state law claim—to compute damages, for instance—does not subject that claim to preemption by § 301." Whitehurst v. 1199SEIU United Healthcare Workers E., 928 F.3d at 207.

B.     Application

Here, plaintiff seeks to vindicate state-law rights that exist independently of the CBA—his rights under NYSHRL to be free from discrimination and retaliation, and his right under NYEPA to receive equal pay for equal work, irrespective of his race and national origin.

In Skelton v. Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO, 2019 WL 4784763 (S.D.N.Y. Sept. 30, 2019), the court determined Section 301 does not preempt state-law discrimination claims.  There, the plaintiff alleged that, because of his race, the union "(1) regularly assigned him to less desirable jobs than his white counterparts, and (2) denied him the opportunity to be employed as a Master Mechanic." Id. at *4.  In finding the state claims were not preempted, the court explained:  "The gravamen of Plaintiff's claims is that Local 14 has treated him differently than white union members who are otherwise similarly situated.  It is unnecessary to interpret the terms of the CBAs to confirm the truth of this assertion." Id.

Likewise here, the gravamen of plaintiff's NYSHRL claims is that defendants subjected him to a hostile work environment, denied him overtime opportunities, and refused to promote him because he is African-American, and then retaliated against him after he complained about the discrimination.  As plaintiff correctly notes (Doc. #34 ("Pl. Mem.") at 2–3), even if the

9

defendants had a right not to fill the third Senior Lab Tech position, a factfinder could conclude

they refused to promote plaintiff because he was African American, assuming the facts as

alleged are true.  See Morrison v. Int'l Union of Operating Eng'rs Loc. 14-14B, 2014 WL

3563612, at *2 (E.D.N.Y. July 21, 2014) ("Since [plaintiff's] rights [under the New York City

Human Rights Law ("NYCHRL")] are independent of the CBAs, they are not preempted.  To

put it another way, however the CBAs are interpreted, they cannot authorize Local 14 to violate

the NYCHRL.").  And even if the Court would need to consult the CBAs to determine if

defendants were required to offer overtime to plaintiff before other employees, "the claim of

discrimination does not necessarily require interpretation of a collective-bargaining agreement."

Langford v. Int'l Union of Operating Eng'rs, Loc. 30, 765 F. Supp. 2d 486, 506 (S.D.N.Y.

2011); see also Jones-Cruz v. Rivera, 2021 WL 965036, at *6 (S.D.N.Y. Mar. 14, 2021)

("[W]hile the factfinder might need to consult the CBA to confirm the Complaint's allegation

that Plaintiff is senior to her two White colleagues, Plaintiff's [discrimination] claims . . . . exist

independently of any potential claims that Plaintiff might have been able to assert for breach of

the CBA itself.").

      Similarly, even if the Court needs to consult the CBAs to resolve plaintiff's NYEPA

claim, his right to pay equity is a nonnegotiable state right independent of those agreements.

Whitehurst v. 1199SEIU United Healthcare Workers E., 928 F.3d at 207.

      Accordingly, the Court concludes that plaintiff's NYSHRL and NYEPA claims are not

preempted by Section 301.

III.    <u>Timeliness</u>

Defendants argue all of plaintiff's Title VII failure-to-promote claims are untimely

because he was allegedly denied the promotion in May 2019, more than 300 days before he filed

his charge with the EEOC.

The Court disagrees.

A.    <u>Legal Standard</u>

A plaintiff must file a Title VII notice with the Equal Employment Opportunity

Commission ("EEOC") within 300 days of a defendant's alleged discriminatory acts before

pursuing a Title VII claim in federal court.  42 U.S.C. § 2000e–5(e)(1); <u>McPherson v. N.Y.C.</u>

<u>Dep't of Educ.</u>, 457 F.3d 211, 213 (2d Cir. 2006).  Thus, a Title VII claim is ordinarily time-

barred "if the plaintiff . . . does not file a charge with the EEOC within 300 days after the alleged

unlawful employment practice."  <u>Elmenayer v. ABF Freight Sys., Inc.</u>, 318 F.3d 130, 133 (2d

Cir. 2003).

If a plaintiff shows he has experienced "a continuous practice and policy of

discrimination," the court will "consider all relevant actions allegedly taken pursuant to the

employer's discriminatory policy or practice, including those that would otherwise be time

barred."  <u>McGuirk v. Swiss Re Fin. Servs., Corp.</u>, 2016 WL 10683305, at *9 (S.D.N.Y. June 17,

2016), <u>aff'd</u>, 699 F. App'x 55 (2d Cir. 2017).  Conversely, "[d]iscrete acts of discrimination,

including termination, failure to promote, denial of transfer or refusal to hire, as well as disparate

pay, denials of accommodation and performance evaluations, are not considered to be continuing

violations, even if a plaintiff has experienced more than one of them over a period of time."  <u>Id</u>.

Importantly, however, "an employer performs a separate employment practice each time it takes

adverse action against an employee, even if that action is simply a periodic implementation of an

adverse decision previously made." Elmenayer v. ABF Freight Sys., Inc., 318 F.3d at 134.

Accordingly, "each discrete discriminatory act starts a new clock for filing charges alleging that

act," even if the act relates to past acts. McGuirk v. Swiss Re Fin. Servs., Corp., 2016 WL

10683305, at *9 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002)).

      B.    <u>Application</u>

Here, plaintiff filed his EEOC notice on August 25, 2020.  Thus, his discrimination and

retaliation claims must be based on events alleged to have occurred on or after October 30, 2019.

Defendants' alleged refusal, in May 2020, to promote plaintiff to Senior Lab Tech is a

"discrete discriminatory act," even if it relates to the May 2019 failure-to-promote. Nat'l R.R.

Passenger Corp. v. Morgan, 536 U.S. at 115.  Around March 2020, Forrester, the lab manager at

the time, allegedly submitted paperwork to promote plaintiff because he believed American

Sugar needed a third Senior Lab Tech.  But in May 2020, Valentin informed Forrester that the

company refused to promote plaintiff.  This refusal "start[ed] a new clock for filing charges

alleging that act."  Id.  Because plaintiff filed his EEOC charge within 300 days, his Title VII

claims arising out of the May 2020 failure-to-promote are timely.  See Tobin v. Liberty Mut. Ins.

Co., 553 F.3d 121, 131 (1st Cir. 2009) ("[A]n employee who renews his request for particular

accommodations may bring suit based on a new 'discrete act' of discrimination if the employer

again denies his request.").

Plaintiff also alleges Angone treated him with increased hostility and repeatedly denied

him overtime opportunities after he complained in August 2019 that Angone discriminatorily

refused to promote him.  Certain of these alleged retaliatory acts occurred on or after October 30,

2019 (e.g., Am. Compl. ¶¶ 113–15, 122, 124), and therefore are timely.

IV.     <u>Discrimination Claims</u>

Defendants argue plaintiff fails plausibly to allege discrimination under Title VII, Section 1981, and the NYSHRL because he has not pleaded any adverse action.

The Court disagrees.

A.      <u>Legal Standard</u>

To state a claim for discrimination based upon race or national origin, a plaintiff must plausibly allege he suffered an adverse employment action and the adverse action took place under circumstances giving rise to an inference of discrimination.  <u>Reynolds v. Barrett</u>, 685 F.3d 193, 202 (2d Cir. 2012).

A plaintiff satisfies the first prong by alleging "some employer act or omission that constitutes or causes a material change in terms and conditions of employment."  <u>Quadir v. N.Y.S. Dep't of Lab.</u>, 39 F. Supp. 3d 528, 541 (S.D.N.Y. 2014).  Denial of a promotion may constitute an adverse employment action, <u>Moy v. Perez</u>, 2015 WL 9256991, at *3 (S.D.N.Y. Dec. 4, 2015), as may denial of "the opportunity to work overtime."  <u>Martires v. Conn. Dep't of Transp</u>., 596 F. Supp. 2d 425, 440 (D. Conn. 2009).

As to the second prong, under Title VII and the NYSHRL, a plaintiff "must plead facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'"  <u>Farmer v. Shake Shack Enterprises, LLC</u>, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (quoting <u>Littlejohn v. City of N.Y.</u>, 795 F.3d 297, 311 (2d Cir. 2015)).  Namely, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 87 (2d Cir. 2015).

Under Section 1981, a plaintiff must plausibly allege the employer would not have taken adverse action against him "but for [his] race." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020).  As with Title VII and the NYSHRL, a plaintiff must allege facts from which the Court can infer an intent to discriminate on the basis of race. See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam).

"An inference of discrimination can arise from circumstances including . . . invidious comments about others in the employee's protected group[,] more favorable treatment of employees not in the protected group[,] or the sequence of events leading to" the alleged adverse action.  Littlejohn v. City of N.Y., 795 F.3d at 312.

B.     Application

Here, plaintiff's allegations satisfy the minimal burden necessary to state a discrimination claim under Title VII, Section 1981, and the NYSHRL.

First, at this early stage, plaintiff has sufficiently alleged an adverse employment action because he claims defendants refused to promote him to Senior Lab Tech and denied him opportunities for overtime.

The Court is not persuaded by defendants' argument that plaintiff's claim fails because he does not allege American Sugar was seeking applicants for an open Senior Lab Tech position. (Doc. #28 ("Defs. Mem.") at 15–16).  Although a plaintiff generally must allege he "applied and was qualified for a job for which the employer was seeking applicants," this framework is flexible and "not necessarily applicable in every respect to differing factual situations."  Brown v. Coach Stores, Inc., 163 F.3d 706, 709–10 (2d Cir. 1998) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 802 n.3 (1973)).  Moreover, "the pleading requirements in

discrimination cases are very lenient." Id. at 710. It is sufficient that plaintiff has alleged a "particular adverse employment action" by American Sugar in May 2020—rejecting his March 2020 promotion request—"rather than merely asserting that on several occasions[,] he generally requested promotion." Id.

Plaintiff's allegations that defendants denied him overtime are also sufficient. The amended complaint goes beyond vague, "conclusory allegation[s] that [plaintiff] was denied overtime." Richardson v. Buckheit, 2020 WL 5802291, at *8 (S.D.N.Y. Sept. 29, 2020). For example, plaintiff alleges that in May 2020, Angone asked Johnson to train two junior lab techs to perform Sugar Loss Monitoring and gave them overtime instead of plaintiff. And Plaintiff's allegations regarding hourly and overtime rates, combined with the CBAs' overtime provisions, are sufficient to show that the lost overtime opportunities were "accompanied by a loss in compensation." Id.

Second, plaintiff sufficiently alleges his race and national origin were motivating factors for defendants' actions and the but-for cause of his injuries; i.e., defendants' refusal to promote him to Senior Lab Tech and denial of overtime opportunities. Plaintiff alleges: Angone treated non-African American employees more favorably than African Americans; several coworkers told plaintiff Angone and Dutta "had it out" for him because he was African American and were looking for an excuse to fire him (Am. Compl. ¶ 38); Angone filed a groundless disciplinary ticket against plaintiff for failing to perform a task that was Angone's responsibility; Angone had a history of giving "problems" to African American employees (id. ¶ 58); Angone made invidious comments about African Americans; and the overtime opportunities denied to plaintiff were given to less experienced, non-African American employees. These allegations, taken as

true, are sufficient to support "a plausible inference of discrimination."  See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 87.

Accordingly, plaintiff's discrimination claims under Title VII, Section 1981, and the NYSHRL shall proceed.

V.      Hostile Work Environment Claims

Defendants argue plaintiff's hostile work environment claims must be dismissed because plaintiff "fails to allege that he faced anything more than petty slights or minor annoyances." (Defs. Mem. at 19).

The Court agrees with respect to plaintiff's claims under Title VII and Section 1981, but not with respect to his NYSHRL claim.

A.      Legal Standard

To state a claim for a hostile work environment under Title VII or Section 1981, "a plaintiff must plead facts that would tend to show that the complained of conduct:  (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected status]."  Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007).  "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014).  To determine whether a plaintiff suffered from a hostile work environment, a court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

The NYSHRL, as amended in 2019, imposes a less stringent standard for hostile work environment claims, similar to the standard under the NYCHRL.  Wellner v. Montefiore Med. Ctr., 2019 WL 4081898, at *5 n. 4 (S.D.N.Y. Aug. 29, 2019); N.Y.C. Admin. Code §§ 8-101–8-131.  Accordingly, a plaintiff must plead facts that would tend to show he "has been treated less well than other employees because of" his race or national origin.  See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013) (applying the NYCHRL). "[T]he conduct's severity and pervasiveness are relevant only to the issue of damages."  Id.

B.    Application

Here, plaintiff's allegations, viewed as a whole, cannot be characterized as objectively "severe" or "pervasive" enough to state a hostile work environment claim under Title VII or Section 1981.  However, they are sufficient to state a claim under the NYSHRL.

The allegations underlying plaintiff's hostile work environment claim can be summarized as follows:  Angone scrutinized and criticized plaintiff's work far more than non-African American employees; Angone disparaged plaintiff as "lazy" and a "bad worker" (Am. Compl. ¶ 123); Angone refused to answer plaintiff's work-related questions, even though he would answer the questions of non-African American employees; and Angone made several racist statements.

These allegations are not objectively severe or pervasive enough to state a hostile work environment claim under Title VII or Section 1981.  See Fleming v. MaxMara USA, Inc., 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (no hostile work environment when defendants "wrongly excluded [plaintiff] from meetings, excessively criticized her work, refused to answer

work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her" and one defendant made an isolated racist comment).

However, plaintiff has sufficiently stated a claim under the more lenient NYSHRL standard.  The factual allegations, which the Court must accept as true, plausibly show plaintiff "has been treated less well than other employees because" he is African American.  See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d at 110.  Although Angone's racist comments toward others might not be actionable here, see Gold v. Titlevest Agency LLC, 2020 WL 2835570, at *9 (S.D.N.Y. June 1, 2020), they nonetheless support an inference that Angone treated plaintiff poorly because of his race.  See Howley v. Town of Stratford, 217 F.3d 141, 155–56 (2d Cir. 2000) (factfinder could reasonably infer facially sex-neutral incidents were sex-based when the perpetrator previously made sexually derogatory statements).  Finally, although an employer may avoid liability when "the conduct complained of consists of nothing more than . . . petty slights and trivial inconveniences," that is an affirmative defense for which defendants bear the burden of proof.  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d at 111.

Accordingly, plaintiff's hostile work environment claim under the NYSHRL shall proceed.  However, his hostile work environment claims under Title VII and Section 1981 must be dismissed.

VI.   Retaliation Claims

Defendants argue plaintiff's retaliation claims under Title VII, Section 1981, and the NYSHRL must be dismissed because plaintiff does not allege any materially adverse action after he engaged in a protected activity.

The Court disagrees.

A.      <u>Legal Standard</u>

To establish a presumption of retaliation at the initial stage of a discrimination case, a plaintiff plausibly must plead:  "(1) [he] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [him]; and (3) there exists a causal connection between the protected activity and the adverse action."  <u>Patane v. Clark</u>, 508 F.3d at 115.[3]

Regarding the first element, "[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes" a protected activity.  <u>Littlejohn v. City of New York</u>, 795 F.3d at 317 (quoting <u>Crawford v. Metro. Gov't of Nashville & Davidson Cty.</u>, 555 U.S. 271, 276, (2009)).

As for the second element, an adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d at 90 (quoting <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 57 (2006)).  This definition "is not limited to discriminatory actions that affect the terms and conditions of employment" and therefore "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII."  <u>Id</u>.  Moreover, "[i]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable."  <u>Hicks v. Baines</u>, 593 F.3d 159, 165 (2d Cir. 2010).

---

[3]      Retaliation claims under Title VII, Section 1981, and the NYSHRL are all analyzed under the same standard.  <u>Patel v. City of N.Y.</u>, 2013 WL 1500432, at *1 (S.D.N.Y. Apr. 10, 2013), <u>aff'd</u>, 699 F. App'x 67 (2d Cir. 2017).

Regarding the third element, causation can be shown either (i) "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant," or (ii) "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct."  Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). "The Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between a protected activity and an allegedly retaliatory activity."  Stancu v. New York City/Parks Dep't, 2022 WL 4581844, at *7 (S.D.N.Y. Sept. 29, 2022).  However, "the temporal proximity must be 'very close.'"  Riddle v. Citigroup, 640 F. App'x 77, 79 (2d Cir. 2016) (summary order) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).

     B.     <u>Application</u>

Here, drawing all reasonable inferences in plaintiff's favor, as the Court must at this early stage of the case, the Court concludes plaintiff plausibly alleges retaliation claims under Title VII, Section 1981, and the NYSHRL.

First, plaintiff plausibly alleges he engaged in protected activity when he filed grievances:  (i) on August 26, 2019, stating he was denied the Senior Lab Tech position due to race discrimination; and (ii) on May 28, 2020, stating he was denied a promotion and overtime opportunities due to race discrimination.  The amended complaint also alleges Angone knew about plaintiff's discrimination claims.

As to the next two prongs of the analysis, plaintiff has alleged treatment that closely followed his engagement in a protected activity and "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Vega v. Hempstead Union Free Sch.

Dist., 801 F.3d at 90.  Beginning in August 2019, and for several months thereafter, Angone

allegedly denied plaintiff several overtime opportunities and instead gave these opportunities to

junior employees who were not African American.  In addition, Angone's hostility toward

plaintiff allegedly escalated, with Angone even becoming "furious" when plaintiff used the

bathroom.  (Id. ¶ 123).

Accordingly, plaintiff's retaliation claims shall proceed.

VII.    Aiding and Abetting Discrimination and Retaliation

Defendants argue the claims against Angone and Dutta for aiding and abetting

discrimination and retaliation under the NYSHRL fail because the principal claims must be

dismissed.

For the reasons stated above, the principal NYSHRL claims survive.  However, the Court

agrees plaintiff fails plausibly to allege an aiding and abetting claim against Dutta.

There are no allegations that Dutta participated in discrimination against plaintiff after

2012.[4]  Nor are there any allegations tying Dutta to the alleged retaliation.  Accordingly,

plaintiff's claims against Dutta must be dismissed.  See McHenry v. Fox News Network, LLC,

510 F. Supp. 3d 51, 77 (S.D.N.Y. 2020) (dismissing aiding and abetting claims because

complaint lacked well-pleaded allegations that defendant actually participated in discrimination

and retaliation).

---

[4]    Plaintiff's claims against Dutta arising out of pre-2012 conduct are time-barred, because
plaintiff fails plausibly to allege these claims are "sufficiently related" to his timely claims.  See
Antrobus v. N.Y.C. Health & Hosps. Corp., 2021 WL 964438, at *7 (S.D.N.Y. Mar. 15, 2021).

VIII.   <u>NYEPA Claim</u>

Defendants argue plaintiff's NYEPA claim must be dismissed because he does not allege American Sugar paid different wages to employees of different protected classes for similar work.

The Court disagrees.

To establish a violation of the NYEPA, a plaintiff must plausibly plead:  "(1) that the employer paid different wages to employees [who were not members of the protected class], (2) that the different wages were for work performed under similar conditions, and (3) that the work required the same level of skill, effort, and responsibility."  <u>Durand v. Excelsior Care Grp. LLC</u>, 2020 WL 7246437, at *3 (E.D.N.Y. Dec. 9, 2020).

Plaintiff plausibly alleges that at least twice, he was paid different wages than non-African American employees for similar work, performed under similar conditions.  First, in February 2020, Johnson and Jabbi—who were not African American—were allegedly paid $38.10 per hour (the Senior Lab Tech overtime rate) merely to perform Sugar Loss Monitoring. In contrast, plaintiff was paid the Senior Lab Tech hourly rate ($25.40) or his own overtime rate ($34.63 per hour) for the hours he performed that task.  Second, in April 2020, plaintiff allegedly worked twelve-hour shifts during which he performed the duties of a Senior Lab Tech, but was only paid the Senior Lab Tech rate for two hours each shift.

Accordingly, plaintiff's NYEPA claim shall proceed.

**CONCLUSION**

The motion is GRANTED in part and DENIED in part.

Plaintiff's hostile work environment claims under Title VII and Section 1981 are dismissed, as are all claims against Tappan Dutta.

All other claims may proceed.

By January 5, 2023, the American Sugar defendants and Dennis Angone shall file an answer to the amended complaint.

By separate Order, the Court will schedule an initial pretrial conference.

The Clerk is instructed to terminate Tappan Dutta as a defendant in this action.

The Clerk is further instructed to terminate the motion.  (Doc. #27).

Dated: December 22, 2022
       White Plains, NY

                              SO ORDERED:


                              _____
                              Vincent L. Briccetti
                              United States District Judge